27 N.Y.2d 762 (1970)
Mary J. Rindfleisch, Respondent,
v.
State of New York et al., Appellants. (Claim No. 46007.)
Georgia E. Harvey, as Administratrix of The Estate of Max W. Harvey, Deceased, Respondent,
v.
New York State Thruway Authority et al., Appellants. (Claim No. 44828.)
Gene Adams Refrigerated Trucking Service, Inc., Respondent,
v.
New York State Thruway Authority et al., Appellants. (Claim No. 44801.)
Court of Appeals of the State of New York.
Argued May 13, 1970.
Reargued October 5, 1970.
Decided October 7, 1970.
John R. Davison and Charles S. Woolsey for New York State Thruway Authority, appellant.
Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz and Ruth Kessler Toch of counsel), for State of New York, appellant.
James V. Hall, Edmund S. Brown, Jr., Arthur I. Seld, Harold Horowitz and William E. Balthasar for respondents.
John Van Voorhis for International Bridge, Tunnel and Turnpike Association, Inc., amicus curiae.
Chief Judge FULD and Judges BURKE, BREITEL, GIBSON and BRYANT[*] concur in Per Curiam opinion; Judge BERGAN dissents and votes to reverse in a separate opinion in which Judge SCILEPPI concurs.
*763 Per Curiam.
The expert proof, upon which the Court of Claims decisions and the unanimous affirmance at the Appellate Division were predicated, was that the signs in place at the extremes of the 4.3-mile danger area were inadequate for a high speed, unlighted highway, and that, among other precautions, there were required successive warning signs, displaying specific speed limitations; flares or other lighting sufficient to reveal the extent and density of the smog; and a patrol adequate to observe and act upon changing conditions; and, finally, that when, as here, the visibility required reduction of speed to 5 or 10 miles per hour, the traffic upon the highway should have been escorted through the danger area and that portion of the highway closed. If any of these precautions be deemed extraordinary, so, indeed, was the danger, present and reasonably to be foreseen. The peril and the potentiality of serious accidents had existed for a number of days, during which time there had, in fact, occurred a number of relatively minor accidents, one of them involving Thruway equipment and personnel in the very process of taking protective measures. Further, this was not a case of variable and unpredictable weather merely, but a largely objective situation in which 17 fires burned for days in eight acres of the woodland and muckland areas of the Montezuma preserve bisected by the Thruway.
*764 On the day of the accident, a holiday, no Thruway patrol operated. The State Police patrol apparently consisted of one man who, an hour before the Harvey accident, finding the situation threatening enough to unveil the warning signs and light the flares in place beside them, called his dispatcher, who apparently did nothing; and later, when the smog was really rolling in, he called only his relief trooper and then departed the scene. One of the troopers who covered the Harvey accident that shortly occurred was dispatched two hours later to the accident that immediately preceded, and led to the Rindfleisch accident, during which two-hour period nothing was done to protect the westbound lanes in which that  the third  series of accidents eventually occurred.
Thus, the negligence of the Thruway Authority and the State was established. It was well within the province of the trier of the facts to find, as it did, that neither the deceased driver in the wrongful death case nor the passenger in the personal injury case was contributorily negligent.
The orders should be affirmed with costs.
BERGAN, J. (dissenting).
The accident in the Harvey-Adams claim occurred in the eastbound Thruway lane at 11:00 P.M. November 3, 1964. It is undisputed that at 10:05 P.M. and in the period from 10:20 to 10:30 P.M. there was no fog or smog whatever on the Thruway.
At 10:30 to 10:45 P.M., a period within 15 minutes of the accident, the proof is that "there might be a slight patch of fog" but there was then "nothing" to impair "any" visibility.
Thus, on the actual night of this accident, there is no proof of any dangerous condition on the road until the time of the accident or, by inference, within 15 minutes before it occurred.
The negligence attributed to the Thruway and the State by the Court of Claims was a failure to close the highway or to convoy traffic through the smog area and a failure to give adequate warning of smog conditions.
No responsible public official in charge of a highway could possibly be required, at the risk of being held negligent, to close the road or set up a convoy if he had been informed of the actual conditions on the road during the hour before the Harvey-Adams accident; nor would any of these things be possible of accomplishment in the short period in which actual impairment of visibility arose.
*765 There had, indeed, been smog on the Thruway in this area of the road before November 3. Its origin was a muckland fire some three miles south of the Thruway which, depending on wind and other highly variable atmospheric factors, came intermittently on the Thruway itself. There had been an accident on October 18, two on October 31 and one on November 1, and these time differences suggest that the smog conditions were not constant.
The effect on Thruway visibility thus was intermittent and irregular from day to day and the proof is undisputed that the worst effect was in the night of these accidents, November 3-4.
A sergeant of police assigned in the area testified that November 1st was the first time he noticed "smog of any consequence" and he had never seen such a condition of smog as existed on the night of the accidents.
In view of these conditions the Thruway erected warning signs which the Court of Claims has held inadequate. There were four signs, one on each side of the lane approaching the area in each direction.
Each sign was 4 feet high and 6 feet wide and was red in color, with reflectorized paint. Letters 6 inches high in white reflectorized paint on the background spelled out the legend "REDUCE SPEED" and letters 10 inches high read "Smog Ahead". Approaching each of these four signs along both shoulders of each lane were four lighted flares.
Even the most meticulously careful public road management would rely on drivers to see and act upon these warnings which were placed at the outer edges east and west of the area which might be affected by smog.
With a drifting and changing atmospheric condition it is not readily seen where else they could have been placed. The signs were visible at a distance of 1,700 feet, and to be sure they could be seen, they had to be placed at a point before it would be expected smog would be reached.
The basic theory of Thruway and State liability posed by claimants in this court is that both appellants "with foreknowledge of the presence of smog in the area of the Thruway which would suddenly envelope a traveling motorist in zero visibility while he was traveling at a high but lawful rate of speed, failed to adequately warn the motorist of this unusual artificial condition ahead, failed to ascertain the density and visibility conditions *766 of the smog and failed to close the highway or convoy traffic through the smog so as to obviate the danger to the motorist from the sudden blackness".
Both as to "foreknowledge" of a possible danger created by an intermittent condition beyond the control of appellants, and as a requirement to close the road or establish convoys before the Harvey-Adams accident, this posed theory is the counsel of perfection and not a reasonable measure of liability in negligence.
The State policeman who patrolled this area between 10:05 and 10:45 P.M., whose first observations as to the absence of any smog on the road and then (10:30-10:45 P.M.) a possible "slight patch" have been noted, saw on his first tour at 10:45 P.M. that there was fog or smoke "commencing" a mile south of the Thruway.
This led him to uncover the warning signs and light the flares  a careful and reasonable precaution against the possibility that smog would come over the Thruway.
But there was no certainty of that and previous experience with the smog had been that it was intermittent. It seems an extremely heavy burden to impose, as this court is now doing, a duty on the Authority and the State then to have immediately closed the road or to have established convoys.
The testimony of the Thruway's traffic engineer, a member of the Institute of Traffic Engineers and a man of training and experience in the field of traffic safety, showed that the closing of the Thruway involved not only the backing up of traffic on that road but also the re-routing of traffic to the collateral roads in the area which were equally affected by smog.
Although, as the danger developed on the night of the accidents, convoys were established and the road closed, this action could not have been required at the time of the first accident.
That the Chief of the Bureau of Engineering in the Division of Motor Vehicles, Department of Law and Safety of New Jersey, the expert whose opinion was offered by claimants, felt that additional information should have been given in the signs, i.e., the speed allowed; that additional signs should have been placed on the road with more kerosene flares and that the road should have been illuminated so the density of the smog would show up better, was not a reasonable basis to find negligence.
*767 The patrolling of the area also suggested by this expert was regularly followed as the State police testimony showed. The New Jersey witness had no Turnpike experience and neither his qualifications nor his opinion authorize the rejection of the judgment of Thruway authorities, spelled out in the record by its traffic and safety engineer, that the precautions here taken were adequate.
Indeed, appellants suggest that in no reported decision has a liability been imposed on a public authority under conditions like the present case where intermittent causes of danger were entirely beyond the control of the public agency responsible for the road.
On the Rindfleisch claim the accident occurred about two hours after the Harvey-Adams occurrence. Claimant's husband Rudolph Rindfleisch was driving the car in which claimant was riding. Although he testified he did not see the sign as he approached the area, his Motor Vehicle Accident Report stated that "I noticed a smog sign and slowed down".
The Court of Claims found that both claimant and her husband were "fully informed of the existence of the smog condition". This was on the basis of their testimony the car was stopped after smog was encountered, but then continued on in the smog. The court found Mr. Rindfleisch negligent. The accident occurred when their car ran past 10 lighted chemical fuses strung along the shoulder of the road for 100 feet, and struck a truck moving slowly. The value of a convoy in this kind of situation is dubious and the appellants' negligence is not shown to be a cause of the occurrence.
The orders should be reversed and the claims dismissed.
Orders affirmed.
NOTES
[*] Designated pursuant to section 2 of article VI of the State Constitution in the temporary absence of Judge JASEN.